JOHN W. HUDSON, Executor, and MABELLE H. MELENDY, Executrix, v. CHARLES HUDSON and HENRY HUDSON.

Eastern Section. January 9, 1926.

Certiorari denied by Supreme Court, May 22, 1926.

1. **Trial. Wills. When the county court certifies a case to the circuit court to try the issue of devisavit vel non that court has nothing to do but try the question of will or no will.**

    In an action to have an instrument probated as a will where a plea of estoppel was entered in the county court and that court overruled the plea and certified the case to the circuit court to try the issue devisavit vel non, held that the circuit court has nothing to do but try the question of will or no will and that the question of estoppel has no more to do with the trial of that issue than the construction of the will after it is established.

2. **Executors and administrators. An executor cannot estop himself to perform his legal duty.**

    An executor cannot estop himself by probating a former will and cannot make a binding agreement not to probate a will which it is his legal duty to probate.

3. **Estoppel. An executor probating only a part of a will is not estopped from later probating another paper which is a part of the will.**

    In an action to have a certain letter probated as a part of deceased's will where the defendant pleaded an estoppel because the executor knowing of the paper at the time of the probate of the will, did not offer it for probate, held that the executor could not be estopped by such acts to perform his legal duty.

4. **Wills. If a paper is testamentary in substance and in form the fact that the testator did not intend that it should be probated will not defeat the testamentary character of the paper.**

    In an action to have a certain letter probated as a part of testator's will where the testator had prepared his will and properly executed it wherein he provided that each of his children should receive a certain per cent of his estate and at the same time prepared a letter to each of his executors wherein he designated the specific property that should go to each child to make its per cent of the estate, the letter being signed at the same time as the will and before the same witnesses to the will, held that the letter was testamentary in substance and in form and the fact that the testator did not intend to have it probated did not defeat the right to have the instrument probated.

Appeal in Error from Circuit Court, Knox County; Hon. A. C. Grimm, Judge.

Reversed.

Cates, Smith, Tate & Long, and Webb & Baker & Egerton, of Knoxville, for John W. Hudson, Extr., et al. appellant.

Green & Webb and W. T. Kennerly, of Knoxville, for Charles Hudson et al. appellee.

HEISKELL, J.  This case originated in the county court, in a petition by the plaintiffs, as executors of the will of Charles H. Hudson, to have a certain letter or paper writing probated as a part of the will of said testator, or as a codicil thereto.

The plaintiffs and defendants are the four children of Charles H. Hudson, deceased, and he left no other children.

· Major Charles H. Hudson, a resident of Knoxville, executed his will on December 11, 1921, and died September 29, 1922. His will was probated October 9, 1922, and the plaintiffs qualified as executor and executrix. They will be spoken of herein as executors.

At the same time the will was witnessed and immediately after the execution of the will and in the presence of the attesting witnesses, Major Hudson signed a letter or paper writing addressed to his executors, but did not request the witnesses to sign said paper. This paper will be referred to herein as "the letter" or "the paper writing."  The will was executed and the letter was signed in duplicate and copies of each placed in two separate envelopes, together with a map showing certain real estate. He referred to these envelopes and contents as his will. One envelop was given to his son, Jno. W. Hudson, and the other to his son-in-law, Mr. Melendy.

The portion of the will material to notice is as follows:

"The residue of my estate shall be divided and go to my heirs as follows:  to my son Charles Hudson 28 per cent, to my son Henry Hudson 25 per cent, to my son John W. Hudson 19 per cent, to my daughter Mabelle H. Melendy 28 per cent."

The letter reads:

"To My Executors:  Below find a statement showing the manner in which I wish 'the residue of my estate' mentioned in my will divided, 28 per cent substantially going to my son Charles, 25 per cent to Henry, 28 per cent to Mabelle and 19 per cent to John."

Then following a list of the stocks and bonds, showing those designated to go to each of the children. On June 11, 1924, the Executors offered this letter for probate, as part of the said will, or as a codicil thereto.  The first application to the county court was oral, but upon objection to this proceeding, on June 25, 1924, the petition was filed by plaintiffs to probate said letter.

On June 30, 1924, defendants, Charles and Henry Hudson, appeared in the county court and filed a demurrer, which being overruled, defendants filed an answer, in which the grounds of demurrer which they were allowed to rely on, were set up as an estoppel; that is, that the plaintiffs had probated the original will as the sole, only and last will of Charles H. Hudson, and also the further defense that if the testator had signed said letter he had been unduly influenced by the plaintiffs.

On a hearing in the county court the judge held that the plaintiffs were not estopped from offering the said letter for probate, but that inasmuch as the answer contested the validity of said paper writing, the court certified same to the circuit court of Knox county for trial. Defendants prayed an appeal to the circuit court from the action of the county court, deciding the question of estoppel against them, which appeal was granted.

The first circuit court convening, after the filing of the county court record in this case, was on the first Monday in September, 1924, and on September 4, 1924, petitioners, John W. Hudson and Mabelle H. Melendy, as Executors of the last will and testament of their father, Charles H. Hudson, filed, conformably to proper practice, a declaration setting up the validity of said letter as a part of or a codicil to, the last will and testament of their father, Charles H. Hudson, deceased.

On December 24, 1924, defendants caused to be heard by the circuit court the demurrer which they had filed to the petition of the Executors in the county court, and said demurrer was overruled by the circuit judge, as it had been overruled by the county judge—in effect holding that the petitioners, as Executors, were not estopped from setting up or offering for probate the said letter.

And at the same time the court granted petitioners' motion, requiring the defendants to plead to the declaration filed by them on September 4, 1924, as hereinbefore shown, and directing issue to be made up.

Thereupon, the court on the same day set the case for trial upon all issues, "including those raised by defendants on their appeal from the county court on the preliminary question of petitioners' right to offer said paper for probate."

Defendants excepted to the action of the court in overruling their demurrer and prayed an appeal therefrom to the Court of Civil Appeals, but the circuit judge declined to grant such an appeal.

Defendants also excepted to the action of the court in setting the case for hearing upon all the issues, to-wit, their asserted issue of estoppel as a preliminary question and the issues as to whether said paper writing had been executed by the testator and was a part of his last will and testament.

On December 27, 1924, defendants filed the following pleas to the petition of the plaintiffs' aforesaid declaration, to-wit:

1. That the paper writing offered for probate is not the last will and testament of Charles H. Hudson, nor any part thereof, or a codicil thereto; and

2. That said paper writing was not intended by the testator to control his Executor and Executrix or the beneficiaries under said will, in the administraton and division of his estate, or any part thereof.

And on December 27, 1924, the defendants also filed in said circuit court an answer to the petition of the Executors filed in the county court, which said answer was substantially the same as the one filed by them in the county court, as hereinbefore shown.

On February 23, 1925, defendants, over the objection of plaintiffs, were allowed to file another plea, setting up the contention which had been disallowed by the county court, to the effect that plaintiffs, as Executors and as individuals, were estopped to offer said letter of instructions for probate as a codicil or as a part of the will of their father, Charles H. Hudson, deceased by reason of the probate by them of the original will of the said Charles H. Hudson on October 9, 1922, and their appointment as Executors to execute and carry out said will and their acceptance of valuable legacies bequeathed to them under and by the said will, and for the further reason that, as alleged, since their appointment and qualification they have so handled the estate of said testator by selling and disposing of certain bonds as to render it impossible to conform to the distribution expressed and set out in said paper writing addressed to the Executors of said testator.

Plaintiffs opposed and excepted to the filing of said plea and also moved to strike same from the files, for the reason that the facts stated in said plea did not constitute a bar to plaintiffs' right to probate said paper writing, and even if the same were true, the matters set forth in said plea were not available to defendants, under an issue of devisavit vel non. Plaintiffs' motion was overruled and disallowed and they were directed to make instanter defense to said plea, and thereupon, excepting to the action of the court plaintiffs replied, in substance, that said plea was not true and that they had not, either as Executors or as individuals estopped themselves from setting up said paper writing or probating the same.

Said plea of estoppel was offered and allowed to be filed on the same day the issues were being made up to try the testamentary character of letter.

Four issues were formulated by the court after counsel for plaintiffs had submitted two and counsel for defendant had submitted four. However, the judge did not follow the issues in his findings

of facts. After finding that the original will was executed and probated, and the letter to the Executors was signed, all as stated hereinbefore, the substance of the action of the circuit judge is this: He holds that Charles H. Hudson, by the instrument in question, did intend to secretly instruct and advise his personal representatives touching the division of the assets mentioned therein and did intend thereby to control the division of said assets, but because the testator did not intend said instrument to be probated or made public, it is not a part of said will and is not a codicil thereto, and is not a valid testamentary paper.

The judge then holds that by probating the original will and having entered the order of probate drawn by John W. Hudson, adjudging that said writing is the true, whole and last will and testament of Charles H. Hudson; by qualifying as Executors under said will and taking oath to faithfully perform and execute said will, while the paper writing in question was in their possession and the contents known to them; by entering upon the discharge of their duties as Executors, taking legacies under said original will; by undertaking to execute the terms and provisions of the instrument in question—the letter—before offering same for probate, voluntarily converting into money a portion of the bonds referred to therein, thus disabling themselves from carrying out its terms and provisions, by reason of all this conduct the plaintiffs, both as individuals and as Executors, are estopped to claim and rely upon or offer for probate, the instrument in question as a part of the will of Charles H. Hudson, deceased, or as a codicil thereto.

Thirty-five requests for additional findings of fact were filed by plaintiffs. Nine were filed by defendants, and then plaintiffs petition for still further findings.

The response of the circuit judge to the petitions for additional findings of fact take up nearly seventy pages in the transcript. The petitions and response of the judge together occupy more than one hundred and ten pages of the record.

Plaintiffs have filed twenty-nine assignments of error, many of them dealing with these requests for further findings of fact. We cannot attempt to follow or set out all the questions raised by counsel. In the view we take of the case many of them are immaterial. We will attempt to group the assignments of error and condense the facts found, as far as possible.

To change the order in which the circuit judge placed the propositions in his judgment, he held that plaintiffs were estopped to rely on or offer for probate said paper writing, and that even if this were not so, the paper in question is not testamentary and not subject to probate as part of the will or codicil thereto, because while it expresses the purpose and intention of the testator as to the dis-

position of the bulk of his fortune, yet he intended it to be kept secret and not be probated.

If the trial judge is right in either of these propositions the other is immaterial. Assignments of error one, two, eight, fourteen, fifteen, seventeen, twenty-seven and twenty-eight deal with the question of estoppel in different aspects and challenge the correctness of the action of the trial judge in this regard.

Plaintiffs insist, first that the question of estoppel cannot be set up in the trial of an issue devisavit vel non, and second, if it could properly be pleaded, that the facts in this case do not warrant the holding of the trial court.

Plaintiffs insist that the right to impeach or to have probated a will if disputed presents a controversy separate from and preliminary to the contest itself, in which it is competent for the contestant or the contestee to offer evidence as to issues joined and from the determination of such issues an appeal lies before the contest is heard. Cowan v. Walker, 117 Tenn., 135, 140.

In support of this proposition they also cite Murrell v. Rich, 131 Tenn., 407.

On the other hand the brief for defendants cites Miller v. Miller, 5 Heis., 723, and Rogers v. Colville, 145 Tenn., 650, as holding that estoppel may be pleaded. The 5 Heis. case was in the county court. It is not contended, in the present case, that the plea is not proper in that court, but that if the county court overruled the plea and certifies an issue of devisavit vel non to the circuit court, that the question of estoppel must be taken up by appeal and tried as a separate and preliminary question. Rogers v. Colville, was a petition in county court to contest will met by answer setting up estoppel. In the circuit court no objection was made to the defense of estoppel, but it was agreed to try the case on pleadings as made up in the county court.

These cases do not meet those cited for plaintiffs, which seem to support the contention that when an issue of devisavit vel non is certified to the circuit court, that court has nothing to do but try the question of will or no will. That the question of estoppel has no more to do with the trial of that issue than the construction of the will after it is established.

Plaintiffs insist, under these assignments, that if the plea was properly entertained, that on the merits of the issue it should have been overruled. The principal fact relied on by the trial judge to work an estoppel as to the plaintiffs, was that knowing of the letter to the executors and having it in their possession, they probated the original will and did not offer the writing now in question. We find the facts bearing on this point to be as follows:

Just after the death of Charles H. Hudson a family meeting was held and it was agreed by the plaintiffs and defendants that this paper should not be probated. This suggestion came first from Charles, and he seemed more insistent on this than the others. However, all agreed readily that the original will should be probated at once and that the letter should not be. They all understood that their father did not want the letter probated, but they all understood that he did want it obeyed. The trial judge found that the testator did not want this paper probated or made public, because he did not want the tax collector to have the advantage of this information.

We cannot say the evidence does not justify this finding and, therefore, adopt it. This being understood by all the children, supplied a reason satisfactory to all why the letter should not then be probated as part of the will. But while this was understood and agreed on at the time, it was understood by all that the testator had bestowed great labor on this letter and that he wanted it carried out. It is certain that the plaintiffs never had any other idea than to abide by and execute the directions of this letter, as part of their father's will, and if the defendants did not have the same idea, just after their father's death, they at least did not make it known to the plaintiffs that they would not abide by the directions of the letter.

The Executors were justified in thinking, at the time the will was probated, October 9, 1922, that Charles and Henry would agree to carry out the provisions of the letter without probate. Henry, after that, was still considering the matter with an open mind and Charles took the position that the paper writing had no force and effect whatever, but was willing to do what all the others agreed on. If, then, Henry had concluded to agree with John and Mabelle, Charles would have been committed to abide by the writing and probate would have been unnecessary. We are satisfied that neither Charles nor Henry, before the probate of the will, took the position that the letter had no force and effect whatever. If they were informed as to what Mabelle knew, it is inconceivable that they could have thought that their father would take all the time and pains he did, much more than bestowed on the will, to prepare a paper to be without any effect whatever.

Defendants insist on this estoppel in two aspects—judicial estoppel and equitable estoppel. Under the first head they make much of the language of the order drawn by John W. Hudson, at the suggestion of the county judge.

In our estimation this amounts to nothing; nor does the oath to execute the will and qualifying as Executors under it. These are all mere incidents of the probate and can have no greater effect as an estoppel than the mere fact of probating one paper without

the other. A judicial estoppel may always be explained as if made under mistake or misapprehension, in good faith. This probate was made by the Executors under the idea, in which they were justified, that the letter would be given full effect without probate, but even without any specific explanation of mistake or inadvertence in probating the will, the circumstances themselves, the attitude of all the children towards the matter, show that by probating the will as they did, the plaintiffs did not mean that they understood that the letter was to have no effect whatever, but on the contrary, was not at all inconsistent with their contention that the letter was binding, as expressing their father's will, even without probate; therefore, their action in probating the main will was without any element of estoppel to probate the letter, when they met with the denial that it was binding.

If Charles and Henry had said, when the will was first read, ''We do not consider that this letter is worth the paper it is written on; it is merely advisory, and we do not propose to be advised by it, or to abide by it,'' then the plaintiffs would have been put on notice and would have had no excuse for not offering this paper for probate at once. But they did not do this. If Charles said, as he testified he did, that he considered the paper merely advisory, this was entirely consistent with the purpose to abide by it. That might have well been what was in the minds of the executors. ''We all understand our father's wishes; we will treat this paper as advisory, but we will give it the same effect between ourselves, without publicity and without probate, as if incorporated in the probated will.''

The contention of plaintiffs that defendants are estopped to say that the executors are estopped by probating the original will alone, is well taken.

There is no force in the other elements of estoppel urged against plaintiffs. The delay in offering the letter for probate was caused by the bill filed by defendants on February 10, 1923, in the chancery court, enjoining the plaintiffs from probating the writing in question. What was done by the executors does not, according to the findings of fact by the circuit judge, at all interfere with the execution of this letter as part of the will. Nor have the executors taken any benefit under the will at all inconsistent with treating this letter as part of the will. And lastly, the defendants have suffered no injury by any conduct or act of the executors and have not been put in any worse position whatever. This is an essential element in equitable estoppel. Sartain v. Dixon Coal & Iron Co., 150 Tenn., 651.

In the brief for defendants an elaborate argument is made to the effect that one cannot take under a will and at the same time

attack or contest the will, and this argument is supported by an abundant citation of authority.

The argument made and authorities cited do not control this case. The complainants are not claiming adversely to the will of their testator; they are seeking to carry out that will. They have not taken anything under the probated will inconsistent with their claims under the addition to the will. They propounded the letter or codicil for probate as showing the intent of the testator, and this being objected to, the county court certified a contest to the circuit court. They are fighting for the will, not against it. They are seeking to carry out the intention of the testator. They are not taking or claiming under the testamentary intention of the testator and at the same time seeking to avoid that intention, or to annul his will. The letter is not in conflict, but in accord with the will.

In Murrell v. Rich, 131 Tenn., 378, two questions decisive of the present point, as we think, were before the court.

It was held in that case, first, that an executor who had propounded a previous will, while he had in his possession a subsequent will which he mistakenly thought was invalid, might nevertheless propound and have probated the subsequent will.

No issue of estoppel was made, but the defense took the form of res adjudicata, which was in effect the same thing as regards the parties in their capacity as executors, and this defense was overruled and disallowed.

It was held, second, that a written agreement signed by the executor to propound the former will instead of the latter not only was not binding upon the executor, but was not even competent to be introduced in proof on the issue devisavit vel non as to the latter will.

The effect of this case is that an executor can not estop himself by probating a former will and cannot make a binding agreement not to probate a will which it is his legal duty to probate.

McGhee v. Gregg, 11 Miss. (Smedes & Marshall), 70, is precisely in point. The holding of the court is correctly stated in the following head note:

> "An administrator was present at the sale of a slave belonging to his intestate. Held that this circumstance would have no weight in preventing the recovery, by the administrator, of the slave, from the purchaser. He might be estopped of his individual rights, but not deprived of his fiduciary right by such implied assent."

In Wilson v. Wilson, 188 Ky., 53, opposition was made to the probate of a will upon the ground that the parties offering the will for probate should not be allowed to probate it on account of their conduct. Responding to this contention of the contestants the court said:

"That this was intended by her as her will is too clear, we think, to admit of serious argument that the instrument is not testamentary in character, and they cite no authorities whatever to that effect, but they earnestly insist that its probation should have been denied upon the ground of alleged fraudulent and unconscionable acts upon the part of some of the Wilson children, especially Bradley, in suppressing the instrument for so long a time after the mother's death, and in the meantime selling and receiving payment for larger interests in the estate than they owned under the will. It is apparent, however, that nothing that her children may have done since her death can alter the character of the instrument Mrs. Wilson executed in her lifetime, and in this action only the character of that instrument is involved."

In other words, the act of the living cannot, with the consent of the court, destroy the will of the dead.

We are therefore of the opinion that the trial judge was in error in holding that plaintiffs were estopped to insist on the probate of the paper in question.

It is necessary, then, to consider the question whether the trial court was in error in holding that the letter in question was not testamentary—lacked the animus testandi—and therefore was not entitled to probate as part of the will or as a codicil thereto. This question is discussed by plaintiffs under the third, fourth and fifth assignments of error and perhaps others.

The trial judge found as follows:

"Issue No. 2: Did C. H. Hudson, deceased, intend the said paper writing at his death to control the division of the assets of his estate mentioned therein?

"He intended by said paper writing to secretly instruct and advise his personal representatives touching the division of the assets of the estate mentioned therein, and intended thereby to control the division of said assets. He did not intend that the existence and contents of the instrument in question should ever be made public, or that it should ever be probated, or that it should ever be offered for probate, and signed it with the specific design and intent and purpose that it should not, and all the parties to this controversy so understood it on September 30, 1922, and at the time the said Charles H. Hudson's last will and testament was probated on October 9, 1922.

"The instrument in question is not a part of the last will and testament of Charles H. Hudson, deceased, and is not a codicil thereto."

If the trial judge had found that the testator intended the letter to be probated, we take it he would have decided that it was testamentary. We think counsel for defendants would concede that if the letter stood alone it would be testamentary in form and substance, but the argument is made that because the testator made a will, which he had witnessed at the time he prepared the letter, that he could not have intended the letter to be a part of the will, else he would have incorporated it in the will that was witnessed; and besides his intention that it should not be probated, but instruct and bind his Executors, without probate, prevented it from being testamentary and from taking effect as part of the will or as a codicil.

In the briefs for defendants the argument is made and repeated that it would be a most unusual, unnatural and unprecedented thing for a man in possession of his senses, and a careful business man as Maj. Hudson was, to execute two wills at the same time, or not to incorporate the letter in his will which was signed by the witnesses, if he intended it to be part of the will. On the other hand, there is even greater force in the contention that the testator would not, with his daughter, have worked for weeks and months to prepare this paper writing, until he got it to suit him, then have used it to get the percentages inserted in the will, have said and written "this is the way I want the residue of my property mentioned in my will divided," have had copies prepared and put in same envelop with each copy of his will, then have pledged his daughter to see that this wish was carried out, all of which is shown by the proof, if he intended the paper to have no effect whatever.

It is contended for the defendants that the testimony of Mrs. Melendy, as to what her father said to her, is not competent. We think it is competent as part of the circumstances surrounding the execution of the paper writing, but even without this the manner in which the paper was prepared, testimony as to which is undoubtedly competent, leads to the same result, that he intended the paper to control the disposition of his stocks and bonds. This is the essence of a testamentary intent. If the facts and circumstances, intrinsic and extrinsic, lead to this conclusion, the paper is testamentary; if they do not, then the paper is not part of the will.

The trial judge is committed to the view that the letter would be testamentary but for the intention of the testator that it should not be probated and should not be made public. It is not considered necessary, therefore, to cite authority to show that this paper, aside from the intention of the testator that it should not be probated, would be testamentary in substance and in form. The authorities to this effect are abundant and clear.

T. A. Vol. II—35.

It is only necessary to consider the question, did the intention that it should not be probated defeat the testamentary character of the paper?

"To constitute a valid will of personalty, it is not necessary that the testator should intend to perform or be aware that he was performing a testamentary act or that it should in express and imperative terms dispose of the estate. It is sufficient if it be left as a memorandum of the last wishes of the deceased as to the disposition of her or his estate, reduced to writing, at the request of the deceased, by another person." McLean v. McLean, 6 Hum., 452, Citing 1 Williams on Executors, 5 A.

". . . for it is settled law that if the paper contains a disposition of the property to be made after death, though such paper was not intended to be a will or other testamentary instrument, but an instrument of a different shape, yet, if it cannot operate in the latter it may nevertheless operate in the former character." Hester v. Young, 2 Kelly (Ga.), 31; Pollock v. Glassel, 2 Grattan (Va.), 439; Heaston v. Kreig, 167 Ind., 112.

Johnson v. Johnson, 103 Tenn., 35, recognizes this rule, although in that case it was held that the instrument in question was not intended to take effect after the death of the testator, and for this reason was not testamentary.

If paper intended to operate after death of testator it is entitled to probate. 1 Williams on Executors, p. 89.

The fact that the testator wanted the letter kept secret, in order to evade taxes, would not affect the testamentary character of the paper. McLean v. McLean, supra, quotes from Williams on Executors: "Thus a deed poll, or an indenture, a deed of gift, a bond, a marriage settlement, letters drafts on bankers, stocks and bills endorsed for A B, an endorsement on a note 'I give this note to C D' promissory notes, and notes payable by executors to evade legacy duties, have been held to be testamentary."

In Langstaff v. Rennison, 1 Drewry, 31, 61, Eng. Reports Reprint, p. 1332, testator made a note for purpose of keeping gift secret not only from taxing authorities, but from the heirs as well, and it was held that the note could not be paid as a debt for want of consideration, but was testamentary and entitled to be admitted to probate.

If the testator intended that this paper writing should control his executors in disposing of his stocks and bonds, it was testamentary in intention. If it was capable of probate, then it was testamentary in form. It matters not that he intended it to control the disposition of his estate without probate, or even without being

made public; this does not destroy its testamentary character. If all the legatees, there being no creditors involved, agree that the estate may be distributed according to the writing, without probate, or even without publicity, well and good. No violence is done to the testamentary intent of the testator. But if all the parties in interest do not agree to this, then the executors, or any legatees insisting upon the instructions of the writing being followed, have the right to probate the instrument as the only means of conserving and carrying out the testamentary intention of the decedent.

We have, in this discussion, assumed the fact to be proven that Major Hudson intended that the letter should not be probated, and we think this is true, but there may be a question as to whether or not this proof is competent as against the intention on the face of the paper. However, taking the strongest view in favor of the decision of the lower court having decided against it, we do not consider it material to discuss the question of the competency of this evidence.

There is another aspect, however, of this question that deserves notice. It cannot be supposed that the testator spent all the time and pains in preparation of the letter with the idea that if all the children did not consent to abide by its provisions, it should be without any effect whatever. If the testator had any idea about not probating the letter, it was doubtless based upon the belief that the children would all agree to carry out his wishes; without the necessity of probating the paper. It therefore follows that defendants, in order to destroy the testimentary character of the letter, if it can be done by parol proof of this character of an intent contrary to that expressed on its face, must show not only that he intended that it should not be probated, but that he intended that it should fail of any and all effect unless all the children agreed to accept and adopt its provisions. Here we meet the words of the testator to the contrary, as to which there is no dispute. When referring to the letter he said: "This is what I want," and exacted a promise from one of his executors that she would see that it was carried out. If he did not intend for the letter to be obligatory, in case any one of his children objected, then it was useless to exact that promise, because if all agreed there was no need of such a promise, and if all did not agree the promise was not effective. All agree that Major Hudson did not do foolish things.

There is nothing in the proof to show that the testator knew or thought about the meaning and effect of probating a will. The proof shows that John told him it was not necessary to have the witnesses sign the letter. It is not shown that he ever thought of the question of probate. He did, however, intend the letter to control the division of his estate. If he intended it to control

secretly, without the necessity of probate, and his intention cannot be carried out in that way because two of his children have declined to comply with his wishes, then the law steps in and says the wishes of the testator clearly expressed are supreme, and if the paper cannot take effect in the way he intended, then it will be admitted to probate and be made operative in that way. And, as said before, if the plaintiffs agreed that this letter should not be probated at the time the attested will was probated, it was with the understanding that the letter would be observed without probate, and when they found out this would not be done, it was not only their right, but their duty to insist on it being probated. Lassiter v. Travis, 98 Tenn., 330.

There is a good deal in the brief for defendants about the difference between a provision to be incorporated into a will, and a codicil thereto. Here, however, it is not material whether the letter takes effect in the one way or the other. Accordingly to the contention of defendants, and authorities cited on this point, this letter lacks one element only required under the doctrine in regard to provisions to be incorporated in a will, that is, there is no reference to the letter in the will. If the will had referred to this paper, identified as it is, it would become a part of the will automatically. But, even at this, the place in the will for this letter is so specifically prepared and the letter is so shaped to fit into the place made for it in the will, and the letter is so accurately identified that the spirit of the rule seems amply complied with. The will says "I want the residue of my estate divided among my heirs as follows: Charles 28 per cent, Henry 25 per cent; John W. 19 per cent, Mabelle 28 per cent." The letter in substance, says, "as worked out by me in detail in the paper enclosed herewith." If this were in the will there would be no question. But under the circumstances, intrinsic and extrinsic, of this case, is not the distinction technical, rather than real? We think it is. However, considered as a codicil, this element of reference to the paper in the will is not required. To have referred to it in the will would have defeated the purpose to confine the knowledge of it to the Executors and the family. But for the lack of this reference it is like an Exhibit to the will. But if it cannot take effect in this way, it can as a codicil.

Assignments of error twenty, twenty-four and twenty-five as to the exclusion of testimony of John W. Hudson and Mrs. Melendy are sustained. In our opinion this testimony is competent. The other assignments as to excluded or admitted testimony are overruled.

All assignments based upon the ruling of the trial court that plaintiffs were estopped to offer the letter for probate, or to claim under it, are sustained.

All assignments claiming error in the action of the lower court in holding that the letter is not testamentary and not subject to probate, are sustained.

The judgment of the circuit court is reversed and judgment will be entered here sustaining the letter in question as part of the will of Charles H. Hudson and directing that it be probated as such.

Defendants will pay the costs of this court and the circuit court.

Portrum and Snodgrass, JJ., concur.